STATE OF NORTH CAROLINA v. WEATHERSPOON McLAURIN

No. 7914SC1162

(Filed 20 May 1980)

**1. Homicide § 24.1— use of deadly weapon—instruction on inferences proper**

The trial court did not err in charging the jury that an intentional killing by means of a deadly weapon raised the inference that such a killing was unlawful and done with malice, even when self-defense was at issue.

**2. Homicide § 28— defense of habitat—instruction not required**

Defendant in a homicide prosecution was not entitled to an instruction on defense of habitat where there was no evidence that defendant was acting to prevent a forcible entry into his home.

**3. Homicide § 28.4— no duty to retreat within habitat—failure to instruct error**

The trial court in a homicide prosecution erred in failing to charge that there was no duty on the part of defendant to retreat within his habitat, since the evidence tended to show that defendant was on his own premises; deceased carried a pistol; deceased reached into her pocket as if going for a gun; deceased told defendant that she would give him "six little bullets"; and defendant thought deceased intended to follow through with her threat.

APPEAL by defendant from *Brewer, Judge.* Judgment entered 16 August 1979 in Superior Court, DURHAM County. Heard in the Court of Appeals 23 April 1980.

The defendant appellant was tried and convicted for the murder in the second degree of Lucille Surles. Surles had been doing housework for defendant, aged 60, and his mother, aged 86. Defendant had loaned Surles money from time to time, and recently had loaned her $300.00.

On the day of the slaying, defendant had been drinking liquor and taking medicine. Surles' daughter testified that on the night of 9 January 1979, at about 10:30 or 11:00 p.m., defendant telephoned her house and asked to speak with her mother; that she advised defendant her mother was asleep; that defendant hung up but called back and told the daughter to tell Surles that defendant's mother was on her deathbed.

Surles and her daughter drove to defendant's home, arriving at about 11:00 p.m. They were let into the house by defendant and walked into the bedroom where defendant's mother generally stayed. Defendant's mother was not in the room, and defendant

pulled a gun out of his pocket and told the victim, "I called your goddamn ass over here to kill you," and shot Surles one time. Surles' daughter made an effort to call for help on the telephone, and defendant fired a second shot into her mother. The daughter testified that she heard defendant tell her mother that he meant to kill her.

Defendant testified on his own behalf, stating that he believed he had to shoot the victim in self-defense; that he had received $11,000 in a disability claim and had spent great portions of it on the victim and her children; that the victim entered his house while he ". . . was drunk, laying down," using her key; that he asked the victim for his money and she told the defendant she was going to give him "six little bullets" and reached into her coat pocket. Defendant, knowing the victim carried a gun and believing she was going to kill him, shot her twice with his pistol.

The trial judge charged the jury on murder in the second degree, and voluntary manslaughter, and gave an instruction on self-defense. Defendant requested a charge on defense of domicile, which was refused. The jury returned a verdict of murder in the second degree, and defendant appealed.

*Attorney General Edmisten, by Associate Attorney Francis W. Crawley, for the State.*

*Loflin, Loflin, Galloway & Acker, by Thomas F. Loflin III and James R. Acker, for defendant appellant.*

HILL, Judge.

[1] Defendant first contends that the trial court erred in charging the jury that an intentional killing by means of a deadly weapon raises the inference that such a killing was unlawful and done with malice, even when self-defense is at issue. We find no error.

Defendant contends unlawfulness and malice could not be presumed from a finding of an intentional killing by means of a deadly weapon until after the jury had found the absence of self-defense on the part of the defendant beyond a reasonable doubt. Appellant relies upon *State v. Hankerson,* 288 N.C. 632, 220 S.E. 2d 575 (1975), *reversed on other grounds* 432 U.S. 233, 53 L.Ed. 2d 306, 97 S.Ct. 2339 (1977), which interpreted *Mullaney v. Wilbur,*

421 U.S. 684, 44 L.Ed. 2d 508, 95 S.Ct. 1881 (1975). The Court in *Hankerson, supra,* at p. 651, stated that:

> [T]he State must bear the burden throughout the trial of proving each element of the crime charged including, where applicable, malice and unlawfulness beyond a reasonable doubt, . . . If, after the mandatory presumptions [of malice and unlawfulness] are raised, there is no evidence of a heat of passion killing on sudden provocation and no evidence that the killing was in self-defense, *Mullaney* permits and our law requires the jury to be instructed that defendant must be convicted of murder in the second degree. . . . If there is evidence in the case of all the elements of self-defense, *the mandatory presumption of unlawfulness disappears* but the logical inferences from the facts proved may be weighed against this evidence. If upon considering all the evidence, *including the inferences* and evidence of self-defense, the jury is left with a reasonable doubt as to the existence of unlawfulness it must find the defendant not guilty. (Emphasis added.)

The trial court herein charged upon the permissible *inference* of unlawfulness and malice as follows:

> If the State proves beyond a reasonable doubt, or it is admitted that this defendant intentionally killed Lucille Surles with a deadly weapon, or intentionally inflicted a wound upon Lucille Surles with a deadly weapon which proximately caused her death, you may *infer* first that the killing was unlawful; and second, that it was done with malice, but you are not compelled to do so. You may consider the *inferences* along with all other facts and circumstances in determining whether the killing was unlawful and whether it was done with malice. If you *infer* that the killing was unlawful and was done with malice, the defendant would be guilty of second degree murder. (Emphasis added.)

The above portion of the trial court's charge is virtually identical to the language recommended by our Supreme Court in *State v. Harris*, 297 N.C. 24, 28, 252 S.E. 2d 781 (1979), a case in which murder in the second degree was charged and where self-defense was at issue. Our Court recommended the trial courts charge that:

If the State proves beyond a reasonable doubt, or it is admitted, that the defendant intentionally killed the victim with a deadly weapon or intentionally inflicted a wound upon the victim with a deadly weapon that proximately caused his death, you may *infer* first, that the killing was unlawful, and second that it was done with malice, but you are not compelled to do so. You may consider the *inferences* along with all other facts and circumstances in determining whether the killing was unlawful and whether it was done with malice. (Emphasis added.)

The language suggested in *State v. Harris, supra,* and the portion of the charge to which appellant excepted, allow the jury to consider all facts and circumstances, including evidence of self-defense, in determining whether the killing was unlawful. When the issue of self-defense is raised, the State continues to have the burden of proving each element of the crime of murder in the second degree beyond a reasonable doubt. Simultaneously, the additional burden is added of proving malice based on inferences rather than presumptions. The language in the court's charge clearly follows the principles set forth in *Hankerson, supra.*

When evidence of self-defense is presented in a murder in the second degree case, the mandatory presumption of unlawfulness disappears but the logical inferences from the facts proved may be weighed against this evidence. *Hankerson, supra.* The Court by its charge allowed the jury to consider the evidence of self-defense in addition to the permissible inference of unlawfulness in determining whether the killing was unlawful and did not deprive the defendant of due process of law.

[2] Defendant contends the trial judge should have submitted an instruction on defense of habitat or domicile. It is well settled in North Carolina that the defense of habitation or domicile is limited to those cases where a defendant is attempting to prevent a forcible entry into his home. *State v. McCombs,* 297 N.C. 151, 253 S.E. 2d 906 (1979). In the case *sub judice* there is no evidence the defendant was acting to prevent a forcible entry into his home. The deceased and her daughter were already in defendant's home when first observed by the defendant. The trial judge correctly refused to charge on defense of habitation or domicile and proceeded to charge on self-defense.

[3] Defendant attacks the judge's charge saying that the judge erred in failing to charge there was no duty on the part of the defendant to retreat within his habitat or domicile. We agree.

In the present case, not only was the defendant on his own premises, but there is evidence that the deceased carried a pistol; that she reached into her pocket as if going for a gun; that the deceased told the defendant that she would give him "six little bullets"; that the defendant thought the deceased intended to follow through with her threat.

A person is not obligated to retreat when he is assaulted in his dwelling house or within the curtilage thereof, whether the assailant be an intruder or another lawful occupant of the premises. *State v. Browning*, 28 N.C. App. 376, 221 S.E. 2d 375 (1976). Under the circumstances, it was error for the judge to fail to charge upon the defendant's right to stand his ground without retreating.

We do not consider the remaining assignments of error since we must award the defendant a

New trial.

Judges MARTIN (Robert M.) and WEBB concur.