STATE OF NORTH CAROLINA v. FRANKIE WINSLOW AND STATE OF NORTH CAROLINA v. JOVAHNIE WIGGINS WINSLOW

No. 891SC682

(Filed 20 March 1990)

1. **Criminal Law § 321 (NCI4th)— cocaine—joinder of defendants—no error**

The trial court did not err in a prosecution for trafficking in cocaine by possession by granting the State's motion for joinder of the defendants for trial where the State presented ample evidence that each defendant constructively possessed all of the cocaine, so that defendants would have received a fair trial even if each had presented defenses tending to incriminate the other; no objection was made at trial to defendants' attorney's joint representation; and, given the strong evidence of constructive possession by both defendants, the argument that defendants were prejudiced by having one attorney who did not present evidence that the individual defendants possessed only some or none of the cocaine was not persuasive.

**Am Jur 2d, Trial §§ 20, 22.**

2. **Narcotics §§ 4.7, 4.3 (NCI3d)— cocaine—trafficking by possession—constructive possession—no instruction on lesser-included offense**

The trial court did not err in a prosecution for trafficking in cocaine by possession by not submitting the lesser-included offense of possession of cocaine where the evidence was clear that each defendant had constructive possession of all 52.3 grams of cocaine in that defendants emerged together from

STATE v. WINSLOW

[97 N.C. App. 551 (1990)]

the master bedroom where all of the cocaine was found; the bedroom contained clothing and furnishings indicating both defendants lived there; cocaine, drug paraphernalia and large amounts of cash were seized from the bedroom and hall; defendant Frankie Winslow admitted that he lived in the master bedroom and that the drugs would be found there, provided the key to the safe containing cocaine, and had $476 in cash in his pockets; and defendant Jovahnie Winslow's dresser contained cocaine and lactose, $700 in cash, and a notepad with information on cocaine sales, she was seen dropping $1,000 as the officers entered the bedroom, and a total of $1,400 was found in envelopes labeled with the name "Jo."

**Am Jur 2d, Drugs, Narcotics, and Poisons §§ 40, 44.**

3. **Narcotics § 3.1 (NCI3d) — cocaine — evidence of previous buy — admissible**

The trial court did not err in a prosecution for trafficking in cocaine by possession by admitting testimony regarding the purchase of cocaine by a suspect at defendants' house several hours before the search resulting in this prosecution where an undercover SBI agent gave the suspect $2,500 in SBI funds to make the purchase, $600 of those funds were recovered from the informant, and a search of defendants' bedroom revealed the remaining $1,900.

**Am Jur 2d, Evidence §§ 321, 322, 323, 324.**

4. **Criminal Law § 1098 (NCI4th) — narcotics — nonstatutory aggravating factor — intent**

The trial court did not use evidence of a cocaine purchase at defendants' house to prove an element of the charged crimes and to aggravate defendants' sentences where the court admitted evidence of the purchase to show that defendants' possession of cocaine was knowing or intentional and the finding of the nonstatutory aggravating factor that both defendants had the specific intent to sell the quantity of cocaine they possessed was supported by evidence that defendants possessed 52.3 grams of cocaine as well as a variety of packaging materials. N.C.G.S. § 15A-1340.4(a)(1).

**Am Jur 2d, Criminal Law §§ 598, 599.**

APPEAL by defendants from judgments entered 1 February 1989 by *Judge Thomas S. Watts* in PERQUIMANS County Superior Court. Heard in the Court of Appeals 6 February 1990.

Defendants Frankie and Jovahnie Winslow were each indicted for trafficking in cocaine, a Schedule II substance, by possession in violation of N.C. Gen. Stat. § 90-95(h). The State's evidence presented at trial tended to show the following:

Special Agent Kenneth Bazemore of the State Bureau of Investigation worked as an undercover agent in drug investigations. On 25 February 1988, he met with a suspect, Calvin Hyman, to make an undercover purchase of one and a half ounces of cocaine. At Hyman's direction, Hyman and Bazemore drove together to defendants' residence. Bazemore gave Hyman $2,500 in SBI special funds to make the cocaine purchase. Hyman entered the defendants' residence and fifteen minutes later returned to the car with two small baggies containing a white powdery substance and white rocks later determined to be cocaine. The trial court instructed the jury that the foregoing evidence was admitted only to show that the defendants had the intent which is a necessary element of trafficking by possession. He further instructed the jury that one of the elements of trafficking in cocaine by possession was that the possession be knowing or intentional.

Based in part on the cocaine Bazemore purchased from Hyman, Bazemore obtained a search warrant for defendants' house and for defendants and their two sons and returned to the house. On voir dire, Bazemore testified that, several minutes after officers entered the house, Frankie said that the master bedroom was his and his wife's and that all the drugs in the house were in that bedroom. After determining that Frankie had not been under interrogation when he spoke, the trial court overruled Frankie's objection and admitted Bazemore's testimony against Frankie only. Although the trial judge did not order Frankie's statement sanitized to remove any reference to Jovahnie, before the jury Bazemore testified that Frankie had said the master bedroom was *his* and any drugs would be found in that bedroom. The trial court instructed the jury to consider Frankie's statement against Frankie only.

The search of the master bedroom revealed the following: Frankie provided a key to unlock a safe found on the bed. The safe contained four baggie corners containing a white powdery

substance determined to be 13.6 grams of cocaine. Officers also found two baggie corners and two paper packets containing a white powder later determined to be 3.7 grams of cocaine. In the bottom drawer of a dresser with a mirror and various cosmetics on top, officers found a napkin containing a plastic baggie with a white powdery substance inside. The SBI lab determined that the powder was 35 grams of cocaine. The dresser also contained a notepad listing names and phone numbers as well as figures Bazemore testified were the weights and costs of various amounts of cocaine. Under the dresser in a shoe was a baggie containing a white powder determined to be lactose, a cutting agent for cocaine. The dresser also contained $300 in an envelope and $400 in a pair of socks. In various spots throughout the bedroom, officers found several boxes of baggies, a strainer, red twist ties, paper packets, face masks and razor blades.

Sergeant Timothy Spence of the Hertford Police Department found ten hundred dollar bills behind a dresser after seeing Jovahnie drop the money there. Eight of the ten bills were from the SBI special funds Bazemore had given Hyman earlier that night. In a shoe box just inside the bedroom door, officers found three white envelopes containing $505, $609, and $600 respectively. The envelopes were labelled with the names "Eric," "Wink," and "Jo." Of the $1,714 contained in the three envelopes, a total of $1,100 was from the SBI special funds Bazemore provided to Hyman. Inside Jovahnie's purse was an envelope labelled "Jo" containing $800. Frankie had $476 in his pocket.

In the hall just outside the master bedroom, officers found one set of Accu-Lab electronic digital scales and seven packages of paper packets. In the upstairs bathroom, officers found baggie corners containing a white powder.

When law enforcement officers entered defendants' house with the search warrant, defendants Frankie and Jovahnie came out of the master bedroom. The bedroom furniture included a double bed with a nightstand on each side. Men's and women's clothing and shoes were found throughout the bedroom.

Defendants did not present any evidence. The jury returned verdicts of guilty of trafficking in cocaine by possession as to both defendants. Each defendant was sentenced to fifteen years imprisonment and fined fifty thousand dollars. From these judgments, each defendant appeals.

STATE v. WINSLOW

[97 N.C. App. 551 (1990)]

*Attorney General Lacy H. Thornburg, by Assistant Attorney General D. Sigsbee Miller, for the State.*

*Linwood Hedgepeth and Georgia H. Goslee for defendant appellants.*

ARNOLD, Judge.

[1] Defendants first assign error to the trial court's granting of the State's motion for joinder of defendants for trial. Defendants had objected to the joinder in an off-the-record bench conference. N.C. Gen. Stat. § 15A-927(c)(2) requires the court to deny joinder of defendants for trial whenever it is necessary to promote or achieve a fair determination of guilt or innocence. Whether defendants should be tried jointly or separately is a question addressed to the sound discretion of the trial judge. *State v. Rasor*, 319 N.C. 577, 581, 356 S.E.2d 328, 331 (1987). Absent a showing that a defendant has been deprived of a fair trial by joinder, the trial judge's ruling on the question will not be disturbed on appeal. *Id.*

Defendants argue that the joint trial prejudiced them in that each was precluded from presenting certain defenses that would have incriminated the other: first, the defense that the other possessed all the cocaine and second, the defense that, while he or she possessed some cocaine, the amount possessed was less than the 28 grams required for a trafficking in cocaine conviction. In support of this argument, Frankie points to the discrepancy between Bazemore's voir dire testimony that Frankie had said the master bedroom was "his and his wife's" and Bazemore's testimony before the jury that Frankie had said the bedroom was "his." Frankie argues this redaction of his statement denied him the defense that he possessed some amount under 28 grams of cocaine.

Antagonism between two defendants' defenses does not necessarily warrant severance. *State v. Nelson*, 298 N.C. 573, 587, 260 S.E.2d 629, 640 (1979), *cert. denied*, 446 U.S. 929 (1980). "The test is whether the conflict in defendants' respective positions at trial is of such a nature that, considering all of the other evidence in the case, defendants were denied a fair trial." *Id.*

In *State v. Cook*, 48 N.C. App. 685, 686, 269 S.E.2d 743, 744, *disc. rev. denied*, 301 N.C. 528, 273 S.E.2d 456 (1980), defendant Whitaker testified that, while he had been present at the murder scene, codefendant Cook had killed the victim. Defendant Cook's

evidence identified codefendant Whitaker as the gunman. *Id.* This Court, while recognizing that these defenses were antagonistic, concluded that both defendants still received a fair trial because the State had presented "ample evidence to support a conviction of either or both defendants of [victim's] murder." *Id.* at 688, 269 S.E.2d at 745.

Similarly, had each defendant here defended on the grounds that he or she possessed only some or none of the cocaine, their defenses would have been antagonistic. However, as discussed further under defendants' next assignment of error, the State presented ample evidence that each defendant constructively possessed all the cocaine. Given all the evidence, defendants would have received a fair trial even if each had presented defenses tending to incriminate the other. The trial court did not, therefore, abuse his discretion in joining the defendants for trial.

Under this same assignment of error, defendants also argue that the joinder was in error because they were represented by the same attorney. No objection was made at trial to defendants' attorney's joint representation. "In order to establish a conflict of interest violation of the constitutional right to effective assistance of counsel, 'a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.'" *State v. Howard,* 56 N.C. App. 41, 46, 286 S.E.2d 853, 857, *disc. rev. denied,* 305 N.C. 305, 290 S.E.2d 706 (1982) (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 348 (1980) ).

Defendants argue that their attorney's performance was adversely affected on the same grounds that they argue they were prejudiced by their joinder for trial, that is, that each was precluded from defending with evidence that he or she possessed only some or none of the cocaine. Again, given the strong evidence that each defendant constructively possessed all the cocaine, we are not persuaded by the argument that defendants were prejudiced by having one attorney who did not present these defenses. This assignment of error has no merit.

[2]   In their next assignment of error, defendants argue that the trial court erred by failing to submit the lesser-included offense of possession of cocaine to the jury. Defendants argue that the evidence of the amount of cocaine each defendant possessed was equivocal. We disagree.

STATE v. WINSLOW

[97 N.C. App. 551 (1990)]

Felonious possession of cocaine requires proof of possession of one gram or more of cocaine, N.C. Gen. Stat. § 90-95(d)(2), while trafficking in cocaine by possession requires proof of possession of 28 grams or more of cocaine. N.C. Gen. Stat. § 90-95(h)(3). No instruction is required on a lesser-included offense when the State's evidence is positive as to each element of the crime charged and there is no evidence showing the commission of a lesser-included offense. *State v. Williams*, 314 N.C. 337, 351, 333 S.E.2d 708, 718 (1985). Here, the evidence was clear that each defendant had constructive possession of all 52.3 grams of cocaine.

Constructive possession of contraband material exists when there is no actual possession of the material, but there is an intent and capability to control its disposition. *State v. Brown*, 310 N.C. 563, 568, 313 S.E.2d 585, 588 (1984). Where possession of the premises is nonexclusive, constructive possession of contraband materials may not be inferred without other incriminating circumstances linking a defendant to the contraband. *Id.* at 569, 313 S.E.2d at 589.

Defendants Frankie and Jovahnie shared their house with each other and their two sons, so each defendant's possession was nonexclusive. However, there were other incriminating circumstances showing each defendant's intent and capability to control the cocaine. Defendants emerged together from the master bedroom where all the cocaine was found. The bedroom contained clothing and furnishings indicating both defendants lived there. Cocaine, drug paraphernalia and large amounts of cash were seized from the bedroom and hall. The following evidence linked Frankie in particular to the cocaine: he admitted that he lived in the master bedroom and that drugs would be found there; he provided the key to the safe containing cocaine; and he had $476 in cash in his pockets. The following evidence linked Jovahnie in particular to the cocaine: her dresser contained cocaine and lactose, $700 in cash, and a notepad with information on cocaine sales; she was seen dropping $1,000 as the officers entered the bedroom and a total of $1,400 was found in envelopes labelled with the name "Jo." The foregoing evidence is sufficient for the jury to infer that each defendant constructively possessed all 52.3 grams of cocaine. Since the State's evidence is positive as to the amount of cocaine each defendant possessed and there was no evidence that either defendant possessed an amount less than 28 grams, the trial court was correct in refusing to submit the lesser-included offense of possession of cocaine to the jury.

[3]  Defendants next assign error to the admission of testimony from SBI Agent Bazemore regarding Calvin Hyman's purchase of one and a half ounces of cocaine from defendants' residence several hours before the search. Defendants argue that there was no evidence showing that one or both defendants, rather than someone else in the house, sold the cocaine to Hyman. We disagree. Bazemore gave Hyman $2,500 in SBI special funds to make the cocaine purchase. Before the search of defendants' house, Bazemore recovered $600 of those funds from Hyman. The search of defendants' bedroom revealed the remaining $1,900. This evidence was sufficient to connect defendants with the earlier purchase. The trial court did not err in admitting evidence of that earlier purchase to show that defendants knowingly possessed the cocaine which was the basis of the trafficking charge.

[4]  In their last assignment of error, defendants argue that evidence of Hyman's cocaine purchase from their residence was used both to prove an element of the charged crimes and to aggravate their sentences in violation of N.C. Gen. Stat. § 15A-1340.4(a)(1). We do not agree. The trial court admitted evidence of Hyman's cocaine purchase from defendants to show that defendants' possession of cocaine was knowing or intentional. The trial court aggravated each defendant's sentence with the nonstatutory factor that both defendants "had the specific intent to sell the quantity of cocaine [they] possessed at the time of the search of [their] residence," citing *State v. Perry*, 316 N.C. 87, 340 S.E.2d 450 (1986). Evidence that defendants possessed 52.3 grams of cocaine as well as a variety of packaging materials support this finding. *See State v. Williams*, 307 N.C. 452, 456-57, 298 S.E.2d 372, 375 (1983). Therefore, evidence used to prove an element of the crime was not also used to support an aggravating factor.

No error.

Judges JOHNSON and ORR concur.