STATE OF NORTH CAROLINA v. DWIGHT ANTHONY GOODSON, Defendant

No. 9010SC573

(Filed 19 February 1991)

1. **Homicide § 30 (NCI3d)— second degree murder—no error in submitting**

    The trial court did not err in a homicide prosecution by submitting second degree murder as a possible verdict where testimony that defendant Goodson was in the back seat holding a woman down while another defendant pummeled her and then confronted her with a knife, in conjunction with testimony that the woman's inert body was dragged to the side of the road, permits an inference beyond any reasonable doubt that defendant Goodson acted with malice and in concert in the unlawful killing of the victim.

    **Am Jur 2d, Homicide § 525.**

2. **Criminal Law § 58 (NCI4th)— second degree murder—first degree murder charge dismissed—not final dismissal**

    The trial court's dismissal of a first degree murder charge was not a final dismissal of the criminal proceeding pursuant to N.C.G.S. § 15A-931(a) (1983) where the prosecutor requested a dismissal of the first degree murder charge before requesting a charge on second degree murder. The record clearly shows that the State's request for a dismissal on the charge of first degree murder was predicated on its request for a charge of second degree murder.

    **Am Jur 2d, Criminal Law §§ 512, 513; Homicide § 211.**

3. **Constitutional Law § 338 (NCI4th)— second degree murder— death qualified jury—no error**

    The trial court did not err by allowing the State to seek a conviction of second degree murder with a death qualified jury. The death qualification of a jury does not deprive a defendant of his constitutional right to a trial by a jury representing a cross-section of the community, and there is no reason a jury qualified to reach a verdict on a charge of first degree murder would not be qualified to reach a verdict on second degree murder.

    **Am Jur 2d, Homicide § 466.**

**4. Criminal Law § 89.4 (NCI3d) — impeachment of witnesses — prior inconsistent statements — admissible**

The trial court did not err in a murder prosecution by allowing the State to impeach a witness with his own prior inconsistent statements because the prior statements used to impeach the witness were not collateral but related directly to the connection between defendant and the victim on the day in question.

**Am Jur 2d, Witnesses § 527.**

**5. Criminal Law § 89 (NCI3d) — conflicting and incredible testimony — issue of credibility rather than competence**

The trial court did not err in a murder prosecution by admitting testimony which defendant contended was conflicting and incredulous. Conflicts in the testimony of a witness affect his credibility and not his competence.

**Am Jur 2d, Witnesses §§ 658, 659.**

**6. Criminal Law § 319 (NCI4th) — murder — defendants joined — no error**

The trial court did not err by allowing the State's motion for joinder of defendants in a murder prosecution where there was a sufficient basis to support a conviction of this defendant apart from the testimony of his codefendant. This defendant would have received a fair trial even if he had presented a defense adverse to the testimony of his codefendant.

**Am Jur 2d, Homicide § 461.**

**7. Criminal Law § 66.9 (NCI3d) — murder — photographic identification — not impermissibly suggestive**

The trial court did not err in a murder prosecution by denying defendant's motion to suppress a photographic identification of defendant where the evidence showed that the attending officers were suggestive with respect to the name of the defendant but not at all suggestive with respect to the photographic image.

**Am Jur 2d, Criminal Law § 798.**

**Admissibility of evidence of photographic identification as affected by allegedly suggestive identification procedures. 39 ALR3d 1000.**

STATE v. GOODSON

[101 N.C. App. 665 (1991)]

APPEAL by defendant from judgment entered 6 September 1989 in Superior Court, WAKE County by *Judge J.B. Allen, Jr.* Heard in the Court of Appeals 17 January 1991.

Defendant was charged with first degree rape and first degree murder and was tried by a death-qualified jury. At the close of State's evidence, the prosecution requested a dismissal on the charge of first degree murder and jury instruction on the charge of second degree murder. Defendant was found guilty of second degree murder and was sentenced to a term of not less than 25 years nor more than 35 years. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Associate Attorney General Lars F. Nance, for the State.*

*John T. Hall for defendant-appellant.*

LEWIS, Judge.

On 9 July 1979 a passerby discovered the victim's body in the woods off a cul-de-sac on Turf Grass Road off Highway 64 East in Wake County. Forensic examination revealed injuries to the head, to both thighs, as well as to the skull and cheek, indicating a blunt force trauma to the head, which was cited as the cause of death. In the fall of 1987, Phillip Price called the Wake County Sheriff's Office to report that on 29 or 30 June 1979 he had been walking along a path by Turf Grass Road toward his nearby residence when he heard noise indicating a struggle coming from a mid-70's burgundy and white Plymouth Fury below. He observed three black males and one black female in the car and recognized the men as three individuals he had known since fourth grade. Defendant Spivey was in the driver's seat, defendant Holden was in the passenger's seat, and the victim, undressed from the waist down, was in the back seat with defendant Goodson. Defendant Holden turned around on his knees and pummeled the victim while defendant Goodson held her. Defendant Holden reached into the glove compartment and pulled out a knife, handing the knife to defendant Spivey, who turned around to face the victim. Spivey and Goodson then dumped the body out of the car and all defendants drove off.

At trial Sylvester Holden testified for the State that he had been riding with Spivey in Spivey's car one day in the summer of 1979 when they picked up Goodson and a black female. Holden testified that Spivey and Goodson, separately, had sexual inter-

course with the woman in the back seat. Goodson got out of the car and stood beside the front right passenger door. Spivey took the female out of the car, slapped her, got a knife and argued with her at the back of the car. Holden did not see Goodson hit the woman and said neither he nor Goodson was involved in the argument. Spivey, leaving the woman behind, entered the car. Goodson sat down in the rear seat and Spivey drove off.

[1] Defendant's first assignment of error is that the trial court erred in that the submission of second degree murder as a possible jury verdict resulted in unfair prejudice to the defendant. We disagree. Murder in the second degree is a lesser included offense of first degree murder. *State v. Benton*, 276 N.C. 641, 657-58, 174 S.E.2d 793, 804 (1970). With the exception of the element of premeditation and deliberation, the elements of the two charges are the same and any defendant preparing a defense for first degree murder is *ipso facto* preparing a defense for second degree murder. While it is possible that a given set of facts would support a jury instruction on first degree murder but not on second degree murder, this is not such a case. *See State v. Arnold*, 98 N.C. App. 518, 532, 392 S.E.2d 140, 149 (1990), *cert. granted*, 327 N.C. 484, 397 S.E.2d 223 (1990). Price's testimony that Goodson was in the back seat holding the woman down while the other defendant pummeled her and then confronted her with a knife, in conjunction with his testimony that the woman's inert body was then dragged to the side of the road, permits an inference beyond any reasonable doubt that defendant Goodson acted with malice and in concert in the unlawful killing of the victim. N.C.G.S. § 14-17 (1979). *State v. Smith*, 221 N.C. 278, 290, 20 S.E.2d 313, 321 (1942). The trial court's submission of a lesser charge is here supported by the evidence and is not prejudicial to the defendant. *See State v. Vestal*, 283 N.C. 249, 252, 195 S.E.2d 297, 299, *cert. denied*, 194 U.S. 874, 38 L.Ed.2d 114 (1973).

[2] Defendant argues in his second and seventh assignments of error that the trial court lacked jurisdiction over the charge of second degree murder because the prosecution requested a dismissal on the charge of first degree murder before requesting a charge of second degree murder, effectively dismissing the indictment. We reject this assignment of error. The record clearly shows that the State's request for a dismissal on the charge of first degree murder was predicated on its request for a charge of second degree murder. We note that defendant's attorney, upon the court's dismissal

of the more serious charge, failed to challenge the jurisdiction of the court. The court's dismissal of the charge of first degree murder was not a final dismissal of the criminal proceeding pursuant to N.C.G.S. § 15A-931(a) (1983).

**[3]** Defendant's third assignment of error is that the trial court erred in allowing the State to seek a conviction on second degree murder with a "death qualified" jury, because a "death-qualified" jury excludes a cross-section of the community. In *State v. Pinch*, 306 N.C. 1, 9, 292 S.E.2d 203, 213 (1982), the North Carolina Supreme Court decided that the death qualification of a jury does not deprive a defendant of his constitutional right to trial by a jury representing a cross-section of the community. We see no reason why a jury qualified to reach a verdict on a charge of first degree murder would not be qualified to reach a verdict on second degree murder. We therefore overrule this assignment of error.

**[4]** Defendant's fourth assignment of error is that the trial court erred in allowing the State to impeach Sylvester Holden by his own prior inconsistent statements because this impeachment did not relate to the issues of the case and served merely as subterfuge by which the State could admit otherwise inadmissible evidence. It is well known that the Rules of Evidence allow a witness to be impeached by his own prior inconsistent statements. N.C.G.S. § 8C-1, Rule 607 (1983). *State v. Ayudka*, 96 N.C. App. 606, 610, 386 S.E.2d 604, 607 (1989). The prior statements used by the State to impeach the witness were not collateral to the case but related directly to the connection between defendant Goodson and the victim on the day in question. This case is clearly distinguishable from *State v. Jerrels*, 98 N.C. App. 318, 390 S.E.2d 722 (1990), on which defendant relies, in that the present case does not involve the impeachment of one witness by the testimony of another on a collateral issue, but the impeachment of a witness by virtue of his own testimony on an issue critical to the trial. *See State v. Younger*, 306 N.C. 692, 697, 295 S.E.2d 453, 456 (1982). We therefore hold that the trial court's admission of this testimony was not in error.

**[5]** Defendant argues in his fifth assignment of error that the trial court committed plain error in allowing the jury to consider the testimony of witness Price. Defendant argues that Price's testimony is conflicting and incredulous. Conflicts in the testimony of a witness affect his credibility and not his competence. *Ward*

*v. Smith*, 223 N.C. 141, 143, 25 S.E.2d 463, 464 (1943). The issue of Price's credibility is a matter for the jury and does not affect the competency of the witness to testify. *Id.*

[6]  In his sixth assignment of error the defendant argues that the trial court erred in allowing the State's motions for joinder of the defendants. Antagonism between two defendants' defenses does not necessarily warrant severance. *State v. Nelson*, 298 N.C. 573, 587, 260 S.E.2d 629, 640 (1979), *cert. denied, Jolly v. North Carolina*, 446 U.S. 929, 64 L.Ed.2d 282 (1980). The test is whether the conflict in defendants' positions at trial is of such nature that, considering all the evidence in the case, defendants were denied a fair trial. *Id.* In *State v. Cook* each defendant testified as to his own innocence as well as to the guilt or complicity of the other defendant in a murder. 48 N.C. App. 685, 686, 269 S.E.2d 743, 744 (1980). The Court concluded that although these defenses were antagonistic, both defendants still received a fair trial because the State had presented "ample evidence to support a conviction of either or both defendants." *Id.* at 688, 269 S.E.2d at 745. Joinder of defendants in the case before us did not prevent defendant Goodson from receiving a fair trial. Taking all the evidence into account, we note that there was a sufficient basis to support a conviction of defendant Goodson apart from the testimony of his codefendant. Defendant Goodson would have received a fair trial even if he had presented a defense adverse to the testimony of his codefendant. *See State v. Winslow*, 97 N.C. App. 555, 389 S.E.2d 435, 439 (1990). We therefore overrule this assignment of error and conclude that the trial court's joinder did not deprive defendant Goodson of a fair trial.

[7]  In his ninth assignment of error defendant argues that the trial court erred in denying the defendant's motion to suppress the identification of defendant Goodson by Price. Defendant argues that the photographic identification of defendant Goodson by witness Price violated the standard of *Neil v. Biggers*, 409 U.S. 188, 34 L.Ed. 2d 401 (1972), in that it was so suggestive as to deny due process. While the evidence does tend to show that the attending officers were suggestive with respect to the name of the defendant, the evidence also shows that the officers were not at all suggestive with respect to the photographic image of the man Price had seen in the back seat of the car, which he picked out of eleven such photographs. Evidence from the identification of a defendant out of a photographic lineup is inadmissible where the procedure, "was

so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *State v. Cobb*, 295 N.C. 1, 8, 243 S.E.2d 759, 764 (1978) (citing *Simmons v. U.S.*, 390 U.S. 377, 384, 19 L.Ed.2d 1247 (1968) ). The officer's suggestiveness with respect to the name of the defendant could in no way affect Price's choice of the photograph bearing defendant Goodson's image. We therefore reject the contention that defendant Goodson was deprived of due process by this photographic identification.

No error.

Judges ARNOLD and JOHNSON concur.